Jacob Harre, Jr., by Jacob Harre, His Father and Next Friend, and Gilbert Harre, Appellants, v. Fayette County Mutual Telephone Company, Appellee.

Opinion filed March 6, 1936.

MATHENY & WELKER, of Vandalia, for appellants.

J. G. BURNSIDE, of Vandalia, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

On July 9, 1934, appellants, Jacob Harre, Jr., and Gilbert Harre, together with their father, brother and a brother-in-law, were returning home in the early evening, over a public highway, from their work of plowing corn and baling straw in a field some distance from their residence. They were all riding on a truck loaded with baled straw, the top of the load being 9 feet and 10 inches from the ground. Across the highway was a guy wire maintained by appellee to steady one of its telephone poles along the side of the road. Said appellants had climbed up onto the bales of straw and were riding near the top of the load, and as they passed along, the guy wire caught them, sweeping them from the loaded truck to the ground, whereby they sustained bodily injuries.

Appellant, Gilbert Harre, was an adult; his brother, Jacob Harre, Jr., was 16 years of age, and the suit in his behalf was brought by his father and next friend. A jury found the defendant not guilty; the court approved the verdict by overruling motions *non obstante*

*veredicto* and for a new trial, and entered judgment on the verdict. Appellants prosecute this appeal, contending that the verdict is contrary to the manifest weight of the evidence.

It is shown by the proof that the wire in question had been maintained in its then position for three or four years; that during such period of time appellants had been accustomed to pass over this highway and under the wire almost daily during the farming season. The height of the wire is in dispute, six witnesses testifying for appellants that they measured same the day following the accident, and that it was 11 feet and 3 inches from the ground. Two employees of appellee on the same day measured the distance from the wire to the roadbed, and stated that they did so with a tape measure and that the height of the wire was 13 feet and 4 inches above the roadway. This was practically the only conflict in the evidence. Appellants insist that the testimony thus clearly proves that the wire was 11 feet and 3 inches above the highway; that it should have been strung from poles at least 25 feet high, and that thereby appellee was negligent in so erecting and maintaining such wire.

A witness for appellee was cross-examined by appellants, over appellee's objection, and permitted to state that, to give proper clearance, the poles from which the guy wire was strung should have been 25 feet in height.

There was no proof on the part of appellants of any regulatory requirement, by any constituted legal authority, that such poles should be of a specified height, nor that the wire crossing the highway should be any specified number of feet above the traveled track. In the absence of such evidence of legal requirements in connection therewith, it appears to be the rule that while telephone wires crossing a highway must be sufficiently high for the safe passage of the usual and

ordinary travel, they need not be high enough to safeguard travel of an extraordinary character; in which case the traveler is required to keep a lookout for his own safety. *Wegener v. Kelley,* 182 Iowa 259, 165 N. W. 449; *Mayhew v. Yakima Power Co.,* 72 Wash. 431, 130 Pac. 485.

Whether the wire was 11 feet and 3 inches, or 13 feet and 4 inches, above the highway track, was a question of fact. The jury saw and heard the witnesses and were in better position than are we, to pass upon their credibility, and the mere fact that six swore to the lower height, and two testified to the greater, is not alone sufficient for us to determine which group told the truth. The weight of the testimony is determined, largely, by the credibility to be accorded to the evidence of the several witnesses, and not inferred, merely, from numbers.

If the wire was in fact 13 feet and 4 inches above the road then it was plainly a question of fact for the jury as to whether same was of a height sufficient to clear the usual and ordinary traffic of the highway. *Mountain States Tel. & Tel. Co. v. Walker,* 35 F. (2d) 465; *Pacific Tel. & Tel. Co. v. Hoffman,* 208 Fed. 221; *Wegener v. Kelley, supra; Friesenhan v. Michigan Tel. Co.,* 134 Mich. 292, 96 N. W. 501; *Phelps v. Board of Com'rs,* 117 Md. 175, 82 Atl. 1058.

Appellee urges that even though it had been found negligent in its maintenance of the wire in question, still the burden was upon appellants to show that at the time of and prior to the accident they were not guilty of a want of ordinary care proximately contributing to the injury; and such is the law. *LaFayette Tel. Co. v. Cunningham,* 63 Ind. App. 136, 114 N. E. 227; *Hovey v. Michigan Tel. Co.,* 124 Mich. 607, 83 N. W. 600; *Friesenhan v. Michigan Tel. Co., supra; Bonjour v. Iowa Tel. Co.,* 176 Iowa 63, 155 N. W. 286; 62 Corpus Juris, p. 74, sec. 81.

The proof establishes that the wire had, for three or four years, been maintained at the place it was situated at the time of the accident, and that appellants had during such time passed the point almost daily during the season of farming operations. A wire strung above and across a public country highway is an object calculated to attract attention, and we think it was a fair inference, for the jury to deduce from the testimony, that appellants knew of its presence.

Whether it was the exercise of ordinary care for appellants to climb to the top of a truck loaded with baled straw, in the growing dusk of evening, and there ride at a height of nearly 10 feet from the ground, when they no doubt knew that they were approaching a wire strung across the highway with which they might collide, or whether such conduct was negligence on their part, and whether it proximately contributed to cause the accident and resultant injuries, were matters, within the rule of the cited authorities, peculiarly the province of the jury to determine.

We find nothing in the record to indicate that the jury were moved by prejudice, partiality or other improper consideration in arriving at their finding. Being charged with the duty of ascertaining the facts involved, and circumstances having been proven from which they might infer such facts as to justify their conclusion, we see no reason for disturbing the verdict and judgment, which will be affirmed.

*Judgment affirmed.*