### LARNED v. VANDERLINDE.

1. EVIDENCE — COLLATERAL ISSUE — NEGLIGENCE — DANGEROUS PLACE—STAIRWAYS.

In actions for negligence it is incompetent to show that other accidents have occurred at the place of injury to show the dangerous condition of the place, as a collateral issue would be raised by the evidence.

2. SAME.

Nor is evidence that no other accidents have occurred at the place competent to prove its safe condition.

3. NEGLIGENCE — STORES — DUTY TO GUARD STAIRWAYS — MERCHANTS.

Where a customer fell down a stairway at the end of a show counter in the back part of defendant's store, in the daytime, and brought action claiming that the place was dark, a request to instruct the jury that if defendant neglected to place guards at the stairway or to warn plaintiff of the danger, she would be entitled to recover, was properly refused, because plaintiff's obligation to use due care was omitted.

4. SAME.

Plaintiff was not entitled to an instruction that she was not guilty of contributory negligence even though she might have seen the opening if she had looked, based on the theory

that every one may assume that the floor of a store which he enters is safe.

5. SAME—CHARGE.

An instruction that the evidence showed plaintiff's sight was good was not erroneous because of the fact that plaintiff else-where testified that her eyes blurred, after she had admitted that her eyesight was good.

6. SAME.

It was not negligence for a storekeeper to omit to place a gate or bar before a stairway in plain sight and out of the place where customers are expected to go.

7. SAME—CONTRIBUTORY NEGLIGENCE.

A customer who, on being asked by a clerk to step this way, followed him to the rear of the store, and at the end of a show counter stepped down an open stairway, guarded on either side by a railing, and visible in the daytime, the accident occurring about noon, was guilty of contributory negligence, in the absence of testimony that plaintiff could not see the stairway.

Error to Muskegon; Sessions, J.   Submitted January 17, 1911.   ( Docket No. 97.)   Decided May 8, 1911.

Case by Margaret Larned against Nicolas G. Vanderlinde for personal injuries.   Judgment for defendant. Plaintiff brings error.   Affirmed.

*James E. Sullivan (Turner & Turner*, of counsel), for appellant.

*Cross, Vanderwerp, Foote & Ross*, for appellee.

HOOKER, J.   The plaintiff, a customer of the defendant, fell downstairs in defendant's store.   In an action for damages based on alleged negligence, the jury, who were permitted to view the premises, found a verdict in defendant's favor, and she, the plaintiff, has appealed.

We have endeavored to make from the testimony a substantially accurate plat of the store, which we attach, that the situation may be more easily understood.

165 MICH.—30 .

The store was a furniture store, and fronted north. On the east side shelving extended the full length. Tables 4 feet wide set 2½ feet from the shelving, extended to within

4 feet of the stairway down which plaintiff fell. The tables or counters were 2½ feet high, and were used for displaying crockery. Plate glass windows covered the entire front, exclusive of doorway. We understand the doors were mainly of glass. The store was 40 feet or more wide. The stairway was four feet wide, with the opening exactly opposite the end of the counter, and four feet distant therefrom, as we have said. On the west side of the stairs an elevator was situated, and its wainscoted shaft extended to the ceiling. There was a newel post four feet high, and a railing extending to the end of the store on the east side of the stairway.

·The plaintiff entered the store between 12 and 1 o'clock, on what she said was a cloudy day, to make a small purchase, and by invitation followed the clerk to the rear part of the store. He went in the passage back of the counters and she outside. He went to the. point marked "X," some four feet beyond the newel post, and took down a lantern chimney, and, as he turned·to show or take it to her, he heard a noise and found that she had followed him beyond the end of the counter, and had fallen downstairs. She testified that she started to go where he was diagonally across from the end of the counter, and, not seeing the stairway, fell downstairs. She claimed that it was dark in the back end of the store; that she was not warned that there were stairs there, and did not notice them, although she also testified that her eyesight was good. She was watching the clerk, had no thought of a stairway, and "supposed she walked directly through to the back down that stairway." The court admitted testimony showing that for nine years the stairs had been used, and no accident had occurred there before. The errors relate, *first*, to the admission of testimony regarding the absence of accidents; *second*, omission to give two requests to charge on the subjects of negligence and contributory negligence; *third*, instructions given upon those subjects.

1. There is an absence of harmony in the decisions on

the subject of the admissibility of proof of other accidents in negligence cases. In Michigan testimony of that kind has been held admissible in sidewalk and other highway cases, but its use has been limited to the question of notice of defects. See *Dotton* v. *Village of Albion*, 50 Mich. 129 (15 N. W. 46); *Moore* v. *Township of Kenockee*, 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555); *Campbell* v. *City of Kalamazoo*, 80 Mich. 655 (45 N. W. 652); *Girard* v. *City of Kalamazoo*, 92 Mich. 610 (52 N. W. 1021); *Corcoran* v. *City of Detroit*, 95 Mich. 84 (54 N. W. 692); *Alberts* v. *Village of Vernon*, 96 Mich. 549 (55 N. W. 1022); *Moore* v. *City of Kalamazoo*, 109 Mich. 176 (66 N. W. 1089); *Gregory* v. *Railway*, 138 Mich. 368 (101 N. W. 546); *Karrer* v. *City of Detroit*, 142 Mich. 331 (106 N. W. 64); 28 Cyc. pp. 1487, 1491; 29 Cyc. p. 613. The general subject is discussed in 8 Enc. of Evidence, p. 926 *et seq.* See, also, *Id.* 878. We are of the opinion that it would not be competent under our cases for the plaintiff in a negligence case to make proof of other accidents for the only purpose of proving the condition, or dangerous nature of the defect complained of. One reason for this is that it would be the raising of collateral issues. Under such a rule, it would not be competent to prove an absence of accidents as tending to show an absence of negligence.

2. In plaintiff's second request, the court was asked to charge that it was the duty of defendant to guard the stairway by a railing or bar, or warn plaintiff, if that was impracticable, by actual notice, and that if the jury should find that defendant did neither, and the stairway was located where a person trading might step into it unawares, they should render a verdict for the plaintiff. The judge properly refused this for it imposed no duty of care on the plaintiff. Doubtless she stepped down the stairs without noticing that they were there, but she owed some care. The learned circuit judge said that it was not negligent to have the stairs there, but he did not relieve the plaintiff from the responsibility of care in their use.

3. The fifth request went so far as to ask an instruction that she could not be found guilty of contributory negligence, "even though she might have seen the opening had she looked," upon the theory that every one has the right to assume that the floor of a store is perfectly safe. Counsel asks us to apply to stairs rules that would be quite strict enough in cases of trapdoors or holes in the floor, where there was no reason to expect them, and where naturally they would not be seen. There was no error in refusing this request.

4. Counsel complains of the statement in the charge that "it appears by the undisputed evidence of the plaintiff herself that her sight was good, and not defective." It is said that, although she said so, the court should not have made this statement, in view of the testimony that her eyes blurred. She did not testify that her eyes were blurred. It was shown that she told defendant a week after the accident that "the light blurred her eyes when she went into the store." No request to charge on this subject was made, and the fact stated by the court was unqualifiedly stated by plaintiff herself. Counsel argued this to the jury, and there is no reason to doubt that it was considered by them.

5. Error is assigned upon the following charge:

"The maintenance of this stairway was not in itself an act of negligence. You examined the premises and saw where the stairway was situated. You have heard all of the evidence in the case also as to the location and situation and condition of the stairway. This stairway was located at the rear, or nearly at the rear of this storeroom. It was located in a place where it was not negligence to maintain a stairway. In this day and age it is necessary and usual for merchants in their stores to have stairways, and there is nothing out of the ordinary in this stairway, and the question as to whether not it was a dangerous place is dependent upon the conditions surrounding its location and dependent upon the circumstances surrounding this particular occurrence. One of the questions for you to determine in this case is whether or not it was light enough so that the plaintiff could have seen the stairway

if she had looked. It was her duty to exercise and use her eyes. It was her duty to see what there was there, where she was going, provided it was light enough so that she could see by the exercise of ordinary diligence and care."

Preceding this excerpt is the following:

"It was the duty of the defendant to keep the floor of his storeroom, to which he expressly or impliedly invited the public to trade, in a condition reasonably safe for his customers at the time. When merchants invite their customers to walk over their floors for the purpose of examining their goods and making purchases, such customers have a right to rely on the safety of the floor; and it was the duty of the defendant in this case, when he invited, as he did, the public to enter his store, and to trade with him in that store, to see to it that the floor of the store was in a reasonably safe condition so that his customers might not suffer an injury."

Unless we are prepared to lay down the rule that inattention was necessarily not negligence under the facts in this case, we cannot say that the judge erred in his charge on the subject of contributory negligence. We cannot lay down such a rule for there are no circumstances that can be said to excuse inattention. Counsel relies on a number of trapdoor and elevator cases, and not upon any case of a conspicuous and obvious stairway.

We have endeavored to go carefully over the assignments of error in this case, and are of the opinion that there is no cause of complaint in the charge under the facts as proved. We approve it in the statement that it is not negligence to omit to bar or warn a customer against such stairs where they are in plain sight and out of the place where customers are expected or asked to go, and we also think the law justified the instruction that one is negligent if he allows such a flight of stairs to escape his notice, from no other reason than mere inattention to his surroundings. The attention of the jury was directed to those circumstances which under the testimony tended to excuse the plaintiff, and to the fact that only the ordinary care of ordinarily prudent persons was required of her.

The fourteenth assignment is as follows:

" The court erred in instructing the jury as follows:

" ' If it was dark upon that occasion at the place where the stairway was located, and this plaintiff received an invitation from the clerk or had a right to believe that his actions and statements were an invitation to go to that place and she acted with due care and caution, and the place was not lighted, then you will be warranted in finding the defendant or his servant, which is the same thing, guilty of negligence in not warning her of the opening down which the stairs led, the opening in the floor. If it was dark there so that she could not see and she was invited to go to that place, it was the duty of the clerk either to have lighted the light which was there so that she might see, or to have warned her of the opening in the floor, and if he failed either to light the light or to give her any warning, and invited her to that place and she could not see by the exercise of reasonable diligence and care, then the defendant or his servant, which is the same thing, is guilty of negligence.' "

Counsel has not alluded to this in his brief, so far as we have discovered, and we do not know what his complaint is to it. It seems to us a fair statement unless, as plaintiff claims, she was entitled to have the jury instructed that inasmuch as the clerk when near the front door asked plaintiff to follow him "Come back this way," it was an invitation to go beyond the counter, and that she was under no obligation to use her eyes, but might assume that there would be nothing that she could receive an injury from, or unguardedly step into, and was therefore entitled to omit all care. We think she was not entitled to such direction. The allegation of negligence in the declaration is that the defendant allowed an opening in the floor near the rear of the store for a stairway leading to the basement to remain open and unguarded without a light or any other thing to point out its dangerous character.

But for the error in admitting testimony regarding the long use of the stairs without accidents we should affirm this judgment without further comment. We do not reverse the judgment on this ground, for the reason that the court might properly have taken the case from the jury, and directed a verdict for the defendant.

The testimony shows conclusively that this stairway was in plain sight, and that the only reason plaintiff failed to see and avoid it was heedlessness of her surroundings. It is true that she stated that it was dark there, but it is clear that the term "dark," as used by her, was a comparative one. We quote her testimony:

"It was between 12 and 1 o'clock and it was a cloudy day at the time I was hurt. * * * Quite a little ways back in the store I noticed a table I think with some fancy lamps on, and I went right on and followed him right back so I don't know what they had. There was some furniture. It was dark. There were no lights burning. I stepped into the basement, and was severely hurt. Down the stairway, I must have walked into the open space and fell to the foot of the stairs."

This was all of plaintiff's evidence in support of the claim of counsel that the stairway was not readily visible. It is noticeable that she did not say that there was any difficulty about seeing it and her cross-examination makes it still more obvious that it was visible, and that the accident was due to inattention. We quote:

"The sun was not shining at that time. In the morning it shone some."

And:

"*Q.* As you approached the rear end of the store, did you look in any particular direction to see anything?

"*A.* I was watching the clerk.

"*Q.* You were watching the clerk?

"*A.* Yes, sir; on my left-hand side and he was a little ahead of me all the way. * * *

"*Q.* As you went back to the rear of the store, did you notice the office in the center of the room?

"*A.* I did not.

"*Q.* Did you notice those chairs that you tell about, one of them that you sat in when you came up later?

"*A.* I noticed chairs there—that is, there seemed to be furniture piled up real high. I don't know whether it was chairs or couches, or what, something like that. That was in the back of the store somewheres. I don't remember whether I saw that chair or the other chairs as I went back towards the rear that day.

"*Q.* Your eyesight is good, I take it?

"*A.* Yes, sir.

"*Q.* Always has been?

"*A.* Yes, sir.

"*Q.* You don't mean to say you walked directly through to the back down that stairway, do you?

"*A.* I supposed I did.

"*Q.* Did you notice an elevator as you approached the rear there at all?

"*A.* No; I did not. I was watching the clerk.

"*Q.* You didn't look for the elevator?

"*A.* No, sir.

"*Q.* You didn't look to see anything except to watch the clerk, as I understand it?

"*A.* I was watching the clerk and where I was going, but it was dark back there. I had no occasion to think of the elevator because I had no occasion to use it.

"*Q.* Did you notice the counters as you went along to your left, as you went along that thoroughfare?

"*A.* Not after I left the door.   *   *   *

"*Q.* Did you notice whether or not the place where the clerk went was to the left in a place farther back than the stairway where you fell?

"*A.* No; I think not.   *   *   *

"*Q.* And you say you don't recollect turning either to the right or left?

"*A.* No, sir.

"*Q.* You didn't see the elevator standing there?

"*A.* No, sir; I wasn't looking for it.

"*Q.* You were looking all the time, you say, at the clerk?

"*A.* I was looking where I was going; that is, I was walking along and following the clerk. Of course, I wasn't looking for any opening.

"*Q.* You know it must be an opening because you fell down?

"*A.* Yes, sir.

"*Q.* You didn't notice it, you say, as you went towards it?

"*A.* No; it was dark. There was no light over it.

"*Q.* You didn't have any trouble about seeing to walk from the front of the store back along by the counter?

"*A.* No; I walked right along.

"*Q.* Your eyesight was able to distinguish things readily?

"*A.* Yes; in the front part of the store.

"*Q.* So far as this stairway is concerned, you don't have any distinct recollection just how it was located in that building?

"*A.* No; I don't know just how it is located in that building.

"*Q.* It is your idea now that you went straight back there and walked right in that stairway, is it?

"*A.* Yes; it seems to me that I did.

"*Q.* Did you think that because you were there in the store that you wouldn't have to observe about you to see where you were going?

"*A.* Why, no; I didn't expect to go into a store and find any opening without any warning or without any light.

"*Q.* Then your idea is that it was so dark back there at the rear end of the store that you couldn't see anything at all, couldn't see the opening?

"*A.* I didn't see it; no, sir.

"*Q.* You had your mind on this lantern globe, I suppose?

"*A.* Yes, sir."

The last quotation is significant of her unwillingness to say that she could not see the stairway by reason of the want of daylight, while the whole testimony indicates most plainly that she was inattentive to her surroundings. If a jury may upon such testimony find that it was negligent to have this stairway unlighted, it is difficult to imagine a stairway in a store which would not be open to the same claim. It is a common thing in stores to find stairs from story to story. Even where there are elevators they are essential to safety and should not be dispensed with nor concealed, and we all know that some stores have no elevators. Every dwelling house has such stairways, yet invited guests do not expect that the owner will have gates or bars, or that they will be lighted on cloudy days. The only legitimate questions upon this record are whether this defendant was negligent for not lighting or barring the stairs by reason of darkness, and whether plaintiff was herself negligent. The plaintiff has failed to make a *prima facie* case upon the first, and has pretty

clearly established the second proposition. The opening, railings, newel posts, and elevator were in plain sight, and, though she walked directly toward them, she was oblivious to their presence. There is no opportunity for any other inference from the testimony.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, and McALVAY, JJ., concurred.